IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SMARTPHONERECORDS, LLC, a California limited liability company, DAMION HOLLOMON, and REYNA CARRASCO,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNIVERSITY OF SOUTH CAROLINA, et al.,<br><br>Defendants. | No. 2:17-CV-0479-KJM-AC<br><br>ORDER |

Plaintiff SmartPhoneRecords, LLC ("SmartPhone"), a California company, developed a cellphone application for artists' use in selling music worldwide. Hoping to create a "version 2.0," SmartPhone registered to participate in a startup-accelerator program in South Carolina. But SmartPhone left disappointed: Version 2.0 was never created; instead the application data was inexplicably erased. SmartPhone and its two owners sue a number of South Carolina defendants associated with the start-up program. Defendants move in separate motions to dismiss for lack of jurisdiction, or alternatively to transfer venue to South Carolina. Mot. One, ECF No. 58; Mot. Two ECF No. 66; Mot. Three, ECF No. 67-1. Plaintiffs oppose. ECF Nos. 70, 72. The court submitted the motions on June 11, 2018. ECF No. 77.

As explained below, the court DENIES the motions to dismiss but GRANTS the motions to transfer.

I. BACKGROUND

SmartPhone is co-owned by two California residents, plaintiffs Damion Hollomon and Reyna Carrasco. First Am. Compl. ("FAC"), ECF No. 51, ¶¶ 1-3. Each defendant is a South Carolina resident associated with the program at issue. *Id.* ¶¶ 4-16 (listing defendants). The program, called "firedUP" is a four-month, in-residence mentorship opportunity for startups in South Carolina. *Id.* ¶ 24. firedUP is managed by a nonprofit, defendant University of South Carolina Incubator ("USC Incubator"). *Id.* ¶¶ 4, 24. Defendant 52 App, Inc. ("52App") helps firedUP participants develop cellphone applications specifically. *Id.* ¶ 8. Several individual USC Incubator and 52App employees are also named as defendants. *Id.* ¶¶ 10-16.

Plaintiffs discovered firedUP through an online advertisement. *Id.* ¶ 21. Although participating meant relocating to the "deep south," plaintiffs felt the opportunity was "too good to pass up." *Id.* ¶ 25. They contacted firedUP's directors and negotiated a Program Agreement in which they transferred a percentage of their company in exchange for a $25,000 cash investment paid over time and program enrollment. *Id.* ¶ 27; Program Agreement, FAC Ex. 2 (signed Feb. 2, 2015). Plaintiffs relocated to South Carolina to begin the program on February 12, 2015. FAC Ex. 1.

Within weeks, plaintiffs' firedUP mentors urged plaintiffs to also contract with defendant 52App for more focused application-development assistance. *Id.* ¶ 8. Plaintiffs agreed. The contract, negotiated and signed in South Carolina, gave plaintiffs application-development assistance in exchange for a percentage of SmartPhone ownership. 52App Agreement, FAC Ex. 3 (executed on unspecified date in March 2015). For the duration of the firedUP program, plaintiffs worked primarily with 52App.

Two days before the firedUP program ended, and right before plaintiffs were supposed to demo Version 2.0, their "entire database" deleted, causing them to lose all work they had done before and during the program. *Id.* ¶ 32. Defendants "feigned ignorance" about how this happened. *Id.* ¶ 33. Given this setback, 52App agreed to continue working remotely with

plaintiffs after plaintiffs returned to California. *Id.* ¶ 34. When plaintiffs' new application finally launched in December 2015, it fell far below plaintiffs' expectations. *Id.* ¶ 39. Meanwhile, a fellow firedUP participant, defendant Tradeversity, Inc., launched a similar application that mimicked confidential information plaintiffs shared during the program. *Id.* ¶ 38.

After unsuccessful attempts to discuss their concerns with 52App, plaintiffs publicly accused 52App of luring them to South Carolina to destroy the application. *Id.* ¶¶ 41-42. Almost immediately, 52App sued SmartPhone in South Carolina state court for defamation, breach of contract and tortious interference. *Id.* ¶ 42(a)-(c). Because plaintiffs could not afford to defend the suit, the court entered default judgment on all claims. *Id.* ¶¶ 43-44. 52App then flooded plaintiffs' systems with internet traffic in the form of "a direct denial of service attack," costing plaintiffs $8,000 in Google charges. *Id.* ¶ 45.

Based on these allegations, plaintiffs bring eight claims. Six claims are pled against "all defendants," without differentiation: Intentional infliction of emotional distress ("IIED"); fraud; conversion; interference with prospective economic advantage; unlawful, fraudulent and unfair business practices; and unjust enrichment. *Id.* ¶¶ 46-49, 56-62. Plaintiffs also bring a breach of contract claim against 52App, *id.* ¶¶ 63-68; and a breach of fiduciary duty claim against all entities except Tradeversity, and against five individuals: USC Incubator director Harry Huntley; and four persons who jointly own 52App., William Kirkland, Charles Hardaway, Christopher Thibault and Brenden Lee. *Id.* at 15-16.[1]

II. MOTIONS TO DISMISS

Defendants move to dismiss for lack of personal jurisdiction or for improper venue, arguing this lawsuit is insufficiently related to this forum to justify litigating the case here. Mot. One at 11-24; Mot. Two at 10-18; Mot. Three at 8-15.

The court declines to dismiss on either basis. First, venue is proper here. A civil action may be brought in "a judicial district in which a substantial part of the events or omissions

---

[1] The complaint erroneously restarts its paragraph numbering on page 15, beginning with the fifth claim, and so the court here references pages and/or line numbers for the latter portion of the complaint.

3

giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Because defendants' allegedly tortious acts damaged plaintiffs' California-based business, venue is proper here. *See, e.g.*, FAC ¶ 14 (alleging defendant destroyed their business); *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001) (reversing dismissal for improper venue; finding because "at least one of the 'harms' suffered by Plaintiffs . . . was felt in Nevada . . . a substantial part of the events giving rise to the claim occurred in Nevada. Thus, venue was proper."). That defendants remained in South Carolina the entire time does not change this conclusion. *Miller v. S & S Hay Co.*, No. 1:12-CV-01796-LJO, 2013 WL 1281589, at *4 (E.D. Cal. Mar. 27, 2013) (focus is not on where defendants were when they committed alleged wrongs). The motions to dismiss for improper venue are DENIED.

Because the interest of justice supports a transfer of venue under 28 U.S.C. § 1404(a), as explained more fully below, the court declines to examine personal jurisdiction. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962) (court may transfer cases "whether the court in which it was filed had personal jurisdiction over the defendants or not."); *Microsoft Corp. v. Hagen*, No. CIV-F-09-2094-AWI-GSA, 2010 WL 11527312, at *1 (E.D. Cal. Aug. 30, 2010) (same); *Kawamoto v. CB Richard Ellis, Inc.*, 225 F. Supp. 2d 1209, 1211 (D. Haw. 2002) (same). Accordingly, the motions to dismiss for lack for personal jurisdiction are DENIED as MOOT.

III. VENUE TRANSFER

Defendants alternatively move to transfer to the District of South Carolina under 28 U.S.C. § 1404(a). *See* Mot. One at 24-26; Mot. Two at 18-19; Mot. Three at 15-17.

Section 1404(a) permits court to exercise discretion, "[f]or the convenience of parties and witnesses, [and] in the interest of justice," to transfer an action "to any other district where it might have been brought." 28 U.S.C. § 1404(a); *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498 (9th Cir.2000) (emphasizing court's broad discretion).

The transfer analysis is two-fold. The court first determines whether the case could have been brought in the forum to which the transfer is sought. *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964) (citing 28 U.S.C. § 1404(a)). If so, the court goes on to make an "individualized, case-by-case consideration of convenience and fairness." *Jones*, 211 F.3d at 498.

A. Step One: Whether the Suit Could have been Brought in South Carolina

The action could have been brought in South Carolina. Because all defendants reside in South Carolina, both venue and personal jurisdiction are proper there. FAC ¶¶ 4-16; *see* 28 U.S.C. § 1391(b)(1) (venue is proper "in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (personal jurisdiction over a corporation exists in whichever forum the corporation regards as home). The first step of the test is satisfied.

B. Step Two: Multi-Factor Fairness Test

The court also assesses whether the interest of justice and convenience of the witnesses and parties warrants transfer. *Jones*, 211 F.3d at 498-99.

The following non-exhaustive factors guide the analysis: (1) Where the relevant agreements were negotiated and executed; (2) which state is most familiar with the governing law; (3) plaintiff's choice of forum; (4) the parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action; (6) litigation costs in one forum versus the other; (7) ability to compel witnesses to appear in either forum; (8) sources of proof; (9) forum selection clauses; and (10) public policy considerations. *Id*. The forum selection clause and compulsory process factors are neutral as there is no such clause and no need for process, respectively. The other factors are analyzed below.

The party seeking transfer must make a "strong showing" that these factors weigh in its favor. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). In deciding whether to transfer venue, courts may consider facts beyond the pleadings and need not accept all allegations as true. *Cf. Murphy v. Schneider Nat'l, Inc.,* 362 F.3d 1133, 1137 (9th Cir. 2004); *Glob. Decor, Inc. v. Cincinnati Ins. Co.*, No. CV 11-2602-JST FMOX, 2011 WL 2437236, at *2 (C.D. Cal. June 16, 2011).

1. Place of Contract Negotiation and Execution

On balance, this factor favors transfer. Defendants were in South California the entire time they negotiated, executed and performed the contracts at issue. FAC ¶¶ 24, 30.

Although plaintiffs were in California when they negotiated and signed the Program Agreement, the terms of that agreement were clear: Plaintiffs had to relocate to South Carolina for the program's duration. FAC Ex. 2 § 1.4 ("[Plaintiffs] shall reside in Columbia, South Carolina as of the Commencement Date and remain resident through the completion of the Development Phase."); *cf. Makinen v. Little*, No. CIV.S-06-01887FCDGGH, 2006 WL 3437529, at *3 (E.D. Cal. Nov. 27, 2006) ("In determining . . . where performance or breach of the contract occurred, the court focuses on the activities of defendants rather than the activities of plaintiff."); *see also Jenkins Brick Co. v. Bremer,* 321 F.3d 1366, 1371-72 (11th Cir. 2003) (same); *Woodke v. Dahm,* 70 F.3d 983, 985 (8th Cir. 1995) (same). As for the 52App contract, it was fully negotiated and signed in South Carolina, and was intended to be performed there. *See* FAC ¶ 30. That 52App offered to continue helping plaintiffs remotely after plaintiffs' return to California does not change that performance of the contract itself was restricted to South Carolina. *See id.* ¶ 34. Accordingly, despite plaintiffs' considerable ties to California, this factor favors transfer. *Cf. Makinen*, 2006 WL 3437529, at *4 (finding transfer appropriate even though the "Plaintiff ha[d] substantial contacts with this forum because of his residence [in California] and ownership of a commercial tour business in this forum.").

2. Which Forum is Most Familiar with Governing Law

South Carolina law governs key issues in this dispute. Although the Program Agreement does not specify what state's laws govern disputes arising under the contract, it does provide, "the laws of South Carolina . . . govern the construction of this agreement." FAC Ex. 2 at 7 (Agreement § 7.5, entitled "Law Governing Construction of Agreement."). Where there is no express choice of law clause, courts focus on where the contracts were intended to be fully performed in identifying the applicable law. *Shanze Enterp., Inc. v. Am. Cas. Co. of Reading, PA*, No. 2:14-CV-02623-KJM, 2015 WL 1014167, at *3–4 (E.D. Cal. Mar. 5, 2015) (citing cases). Here, the parties intended the terms of both agreements to be performed in South Carolina before the program ended. *See* FAC ¶ 32 (explaining all application-development should have ended with an an-residence demo); *id.* Ex. 2 § 1.1 (program duration is 24 weeks, ending with a demo day); *id.* § 2.2 (outlining payment schedule ending on demo day).

Relatedly, defendants correctly note that the default judgment awarded against plaintiffs and for the benefit of 52App may trigger preclusion under the *Rooker-Feldman* doctrine.[2] Mot. One at 9. If so, South Carolina law would govern the required analysis. The *Rooker-Feldman* doctrine forbids federal courts from revisiting claims that are inextricably intertwined with state court decisions. *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 n.4 (9th Cir. 2003). Here, in support of their IIED claim, plaintiffs' allegations reference the South Carolina default judgment that rescinded the 52App contract. *See* FAC ¶¶ 42-44; *see also* Opp'n One, ECF No. 70 at 3-4. Specifically, plaintiffs argue the state judgment, and 52App's pursuit of it, constitutes IIED and a "prior restraint" on free speech. Opp'n at 3-4. This "indirect challenge [against the state judgment] based on constitutional principles," could trigger *Rooker-Feldman*. *See Murphy v. Schwarzenegger*, No. CIVS-09-2587-JAM DAD, 2010 WL 3521958, at *7 (E.D. Cal. Sept. 8, 2010) (quoting *Bianchi*, 334 F.3d at 900 n.4). If so, South Carolina state law will determine whether the claims pending in this suit are barred. *See Noel v*. Hall, 341 F.3d 1148, 1164 (9th Cir. 2003) (quoting *GASH Assoc. v. Village of Rosemont*, 995 F.2d 726, 728–29 (7th Cir. 1993)).

Because a court located in South Carolina is better positioned to apply its law on these major issues, this factor favors transfer. *See Van Dusen v. Barrack*, 376 U.S. 612, 645 (1964) (recognizing advantage to transferring case to state "in which the federal judges are more familiar with the governing laws"); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219, 221 (7th Cir. 1986) (explaining "it is also considered advantageous" to have federal judges try a case "who are familiar with the applicable state law.").

/////

/////

---

[2] This doctrine is named after the two Supreme Court cases from which it derives: *Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

7

### 3. Plaintiffs' Choice of Forum

Ordinarily plaintiffs' choice of forum is afforded great deference. *See Decker*, 805 F.2d at 843 (defendants must make a "strong showing" of inconvenience to overcome plaintiffs' choice of forum). But there are exceptions, one of which is when "the action has little connection to the chosen forum." *Shanze*, 2015 WL 1014167, at *5 (citation omitted); *see also Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1157 (S.D. Cal. 2005) (collecting cases applying this exception).

Here, the only connection to California is that the individual plaintiffs and corporate plaintiff reside here. The offering of the firedUP program was strictly limited to South Carolina and persons residing there. FAC ¶ 26. Plaintiffs voluntarily relocated to South Carolina to join the program, knowing it was run by a South Carolina entity, required relocating to the "deep south," and that all performance would occur in South Carolina. *Id.* ¶¶ 26-30. California of course has an interest in its residents, but under these facts plaintiffs' California residency is an insufficient justification for suing fourteen South Carolina-based defendants here. *Cf. Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) (emphasizing "if the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration."); *cf. Makinen*, 2006 WL 3437529, at *4 (deciding same where plaintiff lived and operated business in original forum). Plaintiffs' choice of forum disfavors transfer, but here only slightly.

### 4. Parties' Forum Contacts and Contacts Relating to Plaintiffs' Claims

These two factors weigh the relative advantage of litigating the dispute in the original forum versus the forum to which transfer is sought. *See Jones*, 211 F.3d at 498.

Here, besides plaintiffs, all parties' contacts relevant to this dispute are in South Carolina. Defendants are all South Carolina residents and entities that intentionally limited their business activities to South Carolina. FAC ¶¶ 4-16. Defendants did not commit any of the alleged contract breaches, fiduciary breaches or torts within California. To the contrary, plaintiffs unilaterally pursued the South Carolina program by responding to an online advertisement and voluntarily relocating to South Carolina once chosen to participate. *Id.* ¶¶ 21-27. South Carolina

residency was a non-negotiable prerequisite to enrollment. *See id.* Ex. 1. This dispute centers primarily on conduct that occurred in South Carolina while plaintiffs were still there. *Id.* ¶ 26 ("Hardaway explained that, during their stay in South Carolina for a few months, Plaintiffs would receive intensive mentoring and support for their plans to refine the [] App and expand its market share."), ¶ 27 ("Hardaway also told Plaintiffs that they would be a 'perfect fit' for Columbia, South Carolina, and that Plaintiffs' stay there would culminate in a presentation of version 2.0 . . . at the conclusion of the firedUP program"), ¶ 33 (application data "wiped out" while in South Carolina), ¶ 38 ("Defendant Tradeversity . . . which had been incorporated in South Carolina . . . launched a mobile app that was based on Plaintiff LLC's intellectual property"), ¶ 47 ("After luring Plaintiffs . . . to South Carolina and using Plaintiff LLC's intellectual property to assist Defendant Tradeversity to develop a mobile app, Defendants conspired to destroy LLC's business by, *inter alia,* deleting all the data on which that business operated, followed by a factually and legally baseless lawsuit [in South Carolina]"). The parties' contacts with the forum favor transfer. *Shanze*, 2015 WL 1014167, at *5 (deciding same).

          5. Litigation Costs

Technology now alleviates many of the burdens of distance litigation, rendering this factor in many ways obsolete. *Foster v. Nationwide Mut. Ins. Co.*, No. 07-04928, 2007 WL 4410408, at *6 (N.D. Cal. Dec. 14, 2007); *Cohen v. State Farm & Cas. Co.*, No. 09-1051, 2009 WL 2500729, at *6 (E.D. Cal. Aug. 14, 2009) (same). Nonetheless, "'because litigation costs are reduced when venue is located near the most witnesses expected to testify,'" and most witnesses here reside in South Carolina, this factor slightly favors transfer. *Park*, 964 F. Supp. 2d at 1095 (quoting *Bunker v. Union Pac. R.R. Co.*, No. 05-04059, 2006 WL 193856, *2 (N.D. Cal. Jan. 23, 2006)). Plaintiffs concede most witnesses are in South Carolina, arguing only that because the two plaintiffs "of very limited means" live in California, transfer is not in the interest of justice. *See* Opp'n One at 22-23. Plaintiffs specifically aver they did not have the "means of identifying and hiring a South Carolina practitioner" to defend them when they were sued in that state by 52inc, Decl. of Damion Hollomon, ECF No. 70-1, ¶ 25, and that their current attorneys are not licensed to practice in South Carolina and "will be unable to represent" them there upon transfer,

9

*id.* While this court is not blind to the attritional effect litigation can have, plaintiffs do not say their counsel could not obtain pro hac vice status in South Carolina, or that they now would be unable to find local counsel to move forward the case they have initiated, following transfer.

In any event, although the fairness and cost to plaintiffs "is a factor to be considered," § 1404(a) is more concerned with the fairness and convenience "of non-party witnesses." *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005) (citation and quotations omitted); *see also Burke v. USF Reddaway, Inc*., No. 2:12-CV-02641-KJM, 2013 WL 85428, at *4 (E.D. Cal. Jan. 8, 2013) ("It is axiomatic that convenience of nonparty witnesses is frequently the most important factor in the section 1404(a) calculus.") (citing cases).

### 6. Sources of Proof

To the extent witness testimony will be taken before trial by deposition, this factor strongly favors transfer. "The convenience of witnesses is often the most important factor in resolving a motion to transfer." *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1095 (N.D. Cal. 2013) (citation omitted).

Here, all witnesses besides plaintiffs are in South Carolina, where all defendants conduct their business, where both contracts were performed, and where most conduct relevant to the dispute occurred. Most evidence, therefore, is likewise located in South Carolina. This factor strongly favors transfer. *Shanze*, 2015 WL 1014167, at *6 (deciding same).

### 7. Public Policy Considerations

Although California courts have some interest in litigating issues pertaining to their own residents, as shown through the careful consideration of each factor discussed above, the facts here establish a tie much stronger to South Carolina. *Cf. Makinen*, 2006 WL 3437529, at *4 (finding transfer appropriate despite plaintiffs' residence and business ties to forum). "Conversely, South Carolina courts have a significant interest in litigating a dispute that involves a contractual arrangement between and the possible tortious activity of two of its resident corporations, many employees at said corporations, and allegedly tortious conduct that took place on its own soil." *Functional Pathways of Tenn., LLC v. Wilson Senior Care, Inc.*, 866 F. Supp. 2d 918, 932 (E.D. Tenn. 2012). As noted above, South Carolina appears to have another public

interest at stake: Plaintiffs attack, at least indirectly, an existing South Carolina state court judgment that rescinded the same contract plaintiffs allege 52App has breached. FAC ¶ 42; *see* Thibault Decl. ¶ 11 (declaring South Carolina judgment "rescinded the agreement . . . for lack of consideration" and found plaintiffs "made defamatory statements about 52Apps and its officers and employees."). This factor favors transfer.

### 8. Relative Docket Congestion

Although neither party addresses the issue, courts may consider "docket congestion and time to trial between the transferee and transferor districts" when deciding whether transfer is in the interests of justice. *Decker*, 805 F.2d at 843; *see* Opp'n at 21 (plaintiffs listing this factor but not analyzing it).

The court *sua sponte* judicially notices the Federal Court Management Statistics published by the Administrative Office of the Courts.[3] *See Balanced Body Univ., LLC v. Zahourek Sys., Inc.*, No. 13-1606, 2014 WL 744105, at *4 (E.D. Cal. Feb. 24, 2014) (doing the same); *Cook v. Hartford*, No. 12-0019, 2012 WL 2921198, at *1 (E.D. Cal. July 17, 2012) (same). As of March 31, 2018, these reports show that congestion currently is far greater in the Eastern District of California, reflecting the ongoing need for creation of new judgeships, than in the District of South Carolina: The median time from filing to trial for civil cases in South Carolina is 21.1 months, and from filing to disposition otherwise is 8.7 months; the corresponding figures here are 44.8 months and 10.2 months. These data on balance favor transfer.

## IV. CONCLUSION

Besides plaintiffs' choice of forum, which weighs against transfer, the relevant factors on balance strongly favor transfer if they are not neutral. Accordingly, in the interests of justice and fairness to the parties and witnesses, the court GRANTS defendants' motions to transfer under 28 U.S.C. § 1404(a). The Clerk of the Court is DIRECTED to transfer this case to the District of South Carolina. Defendants' motions to dismiss are DENIED as MOOT.

/////

---

[3] http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2018.pdf (last visited on Aug. 17, 2018).

11

IT IS SO ORDERED.

This resolves ECF Nos. 58, 66, 67.

DATED: August 20, 2018.

_____
UNITED STATES DISTRICT JUDGE